UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ANN REDEAUX,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TVC FUNDING IV REO, LLC, et al.,<br><br>　　　　Defendants. | Case No. 24-cv-06560-EMC<br><br>**ORDER GRANTING JUDICIAL DEFENDANTS' AMENDED MOTION TO DISMISS; AND ORDER TO SHOW CAUSE**<br><br>Docket No. 29 |

Plaintiff Mary Ann Redeaux, proceeding pro se, has filed a foreclosure-related suit against (1) TVC Funding IV REO, LLC; (2) several judges on the Alameda Superior Court (Noel Wise, Rebekah Evenson, Sarah Sandford-Smith, and Elizabeth Riles); and (3) the Alameda County Superior Court.[1] The defendants listed in (2) and (3) shall collectively be referred to as the "Judicial Defendants." Now pending before the Court is the Judicial Defendants' motion to dismiss. Ms. Redeaux failed to file an opposition to the motion. Having considered the papers submitted, the Court finds this matter suitable for disposition without oral argument. The motion to dismiss is **GRANTED**.

## I.   FACTUAL & PROCEDURAL BACKGROUND

In her complaint, Ms. Redeaux alleges as follows.[2]

---

[1] Ms. Redeaux previously filed a lawsuit against many of the same defendants in *Redeaux v. Wise*, No. C-24-1979 EMC (N.D. Cal.) (hereinafter referred to as "*Redeaux I*"). This Court dismissed the claims in that case in April 2024. Ms. Redeaux filed the instant action in September 2024.

[2] Ms. Redeaux has attached several documents to her complaint, including her own declaration. The Court shall construe the declaration as additional allegations made in support of the complaint.

Ms. Redeaux and her now-deceased husband acquired certain real property in Oakland, California, in 1971. *See* Compl. at 3. In 2019, she wanted to renovate her home to accommodate her medical condition. *See* Compl. at 3; Redeaux Decl. ¶ 3. Her home was valued at approximately $1.1 million at that time. *See* Redeaux Decl. ¶ 3.

Julie Basmadjian, who represented that she was a financial advisor from the company Basmadjian and Jackson Investment Advisory Equitable Partnership LLP ("B&J"), offered to help Ms. Redeaux refinance her home. *See* Redeaux Decl. ¶ 3. Ms. Basmadjian pressured Ms. Redeaux to sign documents without giving her the time "to properly review them." Redeaux Decl. ¶ 4.

"Shortly thereafter, [Ms. Redeaux] was contacted by Fred Ahn, an escrow officer from Eon Escrow Inc. who claimed that $1,380,800 had been deposited into [her] account following the close of escrow." Redeaux Decl. ¶ 5. Ms. Redeaux was "shocked" because she had not approved any sale or transfer of the real property. Redeaux Decl. ¶ 5. The property was purportedly purchased by B&J, but a grant deed was issued to a company called Quadrantss LLC. *See* Compl. (ECF Page 56) (Standard Real Estate Purchase and Sale Agreement between B&J (Buyer) and IJ Mary Ann Redeaux, LLC[3] (Seller), reflecting closing date of 9/15/2019); Compl. (ECF Page 64) (Grand Deed from IJ Mary Ann Redeaux LLC to Quadrantss, LLC, dated 9/18/2019). B&J seems to have some sort of relationship with Quadrantss. *See* Compl. (ECF Page 73) (California Secretary of State Statement of Information for Quadrantss, indicating that Ms. Basmadjian is a manager or member of Quadrantss).[4]

Based on filings made by Ms. Redeaux in *Redeaux I*, it seems that Quadrantss promptly took out a loan from Temple View Capital Funding, LP, with the loan being secured by the real property. *See Redeaux I* Compl., Ex. B (Purchase Money Deed of Trust, dated 9/20/2019, also naming Temple View Capital, LLC as the trustee). It is not clear whether Temple View Capital

---

[3] Presumably, this is an LLC that Ms. Redeaux and/or her husband set up to hold title to the property.

[4] Although the real property was allegedly purchased for $1,138,000, it appears that the vast majority proceeds did not go to Ms. Redeaux because of payments to creditors. *See* Compl. (ECF Page 68) (escrow information)

United States District Court
Northern District of California

Funding, LP has a relationship or affiliation with TVC Funding IV REO, LLC (the only non-Judicial Defendant in this case).

The *Redeaux I* filings also reflect that, approximately two years later, in September 2021, a notice of trustee's sale for the real property was issued to Quadrantss because it was in default under the deed of trust entered into with Temple View Capital Funding, LLC. *See Redeaux I* Compl., Ex. B (notice); *see also* Redeaux Decl. ¶ 7 (stating that "Temple View Capital LLC initiated a non-judicial foreclosure on my property in late 2019"). The real property was subsequently sold at a public auction in October 2021. The property was purchased by TVC Funding IV REO, LLC. *See Redeaux I* Compl., Ex. B (trustee's deed upon sale).

According to Ms. Redeaux, before the property was sold, she filed a motion for a temporary restraining order in state court, seeking to halt the foreclosure. Judge Wise (one of the Judicial Defendants) granted the TRO but, later that day, the foreclosure sale still proceeded. *See* Redeaux Decl. ¶ 8. Subsequently, "Judge Noel Wise falsely claimed that the foreclosure had taken place earlier that morning at 10:00 AM to justify the sale." Redeaux Decl. ¶ 8.

Judge Evenson (another Judicial Defendant) later took over the case. She allegedly dismissed Ms. Redeaux's claims "without reviewing critical evidence" which "allowed the unlawful foreclosure to proceed and led to TVC Funding IV RECO, LLC filing an unlawful detainer action to evict [her] from [her] home." Redeaux Decl. ¶ 9. The unlawful detainer action was filed some two years after the foreclosure, in October 2023. *See* Compl., attachment (ECF Page 17).

In December 2023, Judge Sandford-Smith (another Judicial Defendant) issued a writ of possession against Ms. Redeaux as part of the unlawful detainer suit. The judge – as alleged – "falsely claimed to have reviewed [Ms. Redeaux's] evidence." Redeaux Decl. ¶ 10.

In July 2024, Ms. Redeaux moved to quash the writ of possession. Judge Riles (another Judicial Defendant) denied the motion and further denied a motion to stay enforcement, allegedly in retaliation for Ms. Redeaux trying to recuse the judge. *See* Redeaux Decl. ¶ 11. A copy of Judge Riles's order denying the motion to quash is attached to Ms. Redeaux's complaint. *See* Compl., attachment (ECF Page 167). In that order, Judge Riles stated, *inter alia*, that "Defendants

1  [including Ms. Redeaux] present no documents or other evidence that TVC purchased the Subject
2  Property directly from Quadrantss.  Even if TVC did, Defendants present no evidence that at the
3  time of TVC's purchase TVC had any knowledge of any alleged fraudulent conduct by
4  Quandrants[s] or B&J or that TVC does not otherwise constitute a subsequent purchaser for
5  value."  Compl., attachment (ECF Pages 168-69).

Based on, *inter alia*, the above allegations, Ms. Redeaux has asserted the following claims for relief:

> (1) Violation of due process.  *See* 42 U.S.C. § 1983.  Ms. Redeaux alleges that the state court judges violated due process in making rulings against her.  She also alleges that the Clerk's Department of the superior court violated due process in how it handled filings in the state court cases.  *See* Compl. at 6-7.
>
> (2) Conspiracy to deprive civil rights.  *See id.* § 1985.  Ms. Redeaux alleges that the state court judges, the Clerk's Department, and TVC Funding IV REO, LLC conspired against her, "facilitating the fraudulent foreclosure and eviction."  Compl. at 8.
>
> (3) Financial elder abuse.  *See* Cal. Wel. & Inst. Code § 15610.07 (defining elder abuse as, *inter alia*, financial abuse as defined in § 15610.30); *id.* § 15610.30(a) (providing that financial elder abuse occurs when, *e.g.*, someone "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both" or "[t]akes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence").  This claim is asserted against TVC Funding IV REO, LLC only.

Ms. Redeaux asks for injunctive relief ("[a]n injunction preventing Defendants from enforcing the wrongful foreclosure and eviction" and "[a]n order setting aside the foreclosure and eviction actions") as well as monetary damages (compensatory, punitive, and legal fees and costs).  Compl. at 8-9.

/ / /

/ / /

## II. DISCUSSION

A.  Legal Standard

The Judicial Defendants have moved to dismiss the §§ 1983 and 1985 claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Under Rule 12(b)(1), a defendant may move to dismiss for lack of subject matter jurisdiction.

> A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

*Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In the instant case, the Judicial Defendants make a facial challenge to subject matter jurisdiction.

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim for relief. To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B.  Subject Matter Jurisdiction

The Judicial Defendants consist of (1) the Clerk's Department of the Alameda County Superior Court which is, in effect, the Alameda County Superior Court and (2) several state court judges.

5

1. Eleventh Amendment Immunity

The Court agrees with the Judicial Defendants that it lacks subject matter jurisdiction over the claims against Alameda County Superior Court. As the Court previously held in *Redeaux I*, claims against the superior court are barred by Eleventh Amendment immunity. *See Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1025-26 (9th Cir. 2023) ("Longstanding Supreme Court precedent has interpreted [the Eleventh] Amendment to immunize states from suit in federal court by citizens and noncitizens alike. This immunity extends not just to suits in which the state itself is a named party but also to those against an 'arm of the [s]tate.'"); *Munoz v. Superior Ct.*, 91 F.4th 977, 980 (9th Cir. 2024) ("[T]he Superior Court of the State of California has sovereign immunity as an arm of the state."); *see also McHugh v. Ill. DOT*, 55 F.4th 529, 532 (7th Cir. 2022) ("To assert Eleventh Amendment immunity is to deny[] that the Judicial power of the United States – that is, federal courts' subject-matter jurisdiction – extends to the case at hand.") (internal quotation marks omitted). Eleventh Amendment immunity protects the superior court from both claims for injunctive relief and damages. *See Jaime v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 24-CV-3763 (KMK), 2024 U.S. Dist. LEXIS 106738, at *4 (S.D.N.Y. June 17, 2024) ("[Eleventh Amendment] immunity shields states from claims for money damages, injunctive relief, and retrospective declaratory relief.").

As for the state court judges, Ms. Redeaux does not make clear whether she is suing them in their official or individual capacities. If they are being sued in their official capacities, then Eleventh Amendment immunity is a bar, both for injunctive relief and damages. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 ("[A]s when the State itself is named as the defendant, a suit against state officials that in fact is a suit against the State is barred regardless of whether it seeks damages or injunctive relief.").

The Court acknowledges that the Supreme Court's decision in "*Ex parte Young* created an exception under which individuals can sue state officers in their official capacities if the lawsuit seeks *prospective* relief for an *ongoing* violation of federal law." *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (emphasis added); *see also Merritts v. Richards*, 62 F.4th 764, 771 (3d Cir. 2023) ("[F]or the *Ex parte Young* exception to apply, there must be both an

ongoing violation of federal law and a request for relief that can be properly characterized as prospective."). But here, there is no ongoing violation and Ms. Redeaux is seeking retrospective relief – setting aside the foreclosure and eviction – not prospective. *See, e.g.*, *id.* at 772 ("[T]here is no ongoing violation of federal law. [Plaintiff] pursues injunctive and declaratory relief based on two claimed past violations of federal law: acquiring the easements without justification and not providing just compensation. Although those earlier actions may have present effect, that does not mean that they are ongoing."); *id.* ("By seeking an injunction to cure past injuries – PennDOT's alleged wrongful acquisition of the easements and the alleged lack of just compensation – [plaintiff] asks for a reparative injunction. Such an injunction [requiring defendant to restore plaintiff to a preexisting entitlement] cannot be fairly characterized as prospective.").

If Ms. Redeaux is suing the state court judges in their individual capacities, the claims are barred for independent reasons as discussed below.

2. *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, a federal district court is "prohibit[ed] . . . from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). If Ms. Redeaux is suing the state court judges in their individual capacities and seeking injunctive relief, then she is essentially making a de facto appeal of the state court judges' decisions. *Rooker-Feldman* is therefore a bar, and the Court lacks subject matter jurisdiction over these claims. *See, e.g.*, *Kelsey v. Sherman*, No. 22 CV 1934 (VB), 2022 U.S. Dist. LEXIS 117921, at *8 (S.D.N.Y. July 5, 2022) (stating that "plaintiff's claims for declaratory relief against Judge Catena in his individual capacity must be dismissed for lack of subject-matter jurisdiction" pursuant to the *Rooker-Feldman* doctrine); *Vitti v. Jones*, No. 24-cv-00544-RMI, 2024 U.S. Dist. LEXIS 92814, at *16 (N.D. Cal. May 23, 2024) (stating that plaintiff's "individual-capacity claims against the Court Defendants are indistinguishable from his official-capacity claims – both seek relief that 'amounts to a declaration that the state court judgments were invalid'" and therefore the "this court lacks jurisdiction over all claims against Court Defendants" pursuant to *Rooker-Feldman*).

United States District Court
Northern District of California

C. <u>Failure to State a Claim for Relief</u>

To the extent Ms. Redeaux is suing the state court judges in their individual capacities and seeking monetary damages as relief, there is a different bar. Specifically, the state court judges have absolute judicial immunity from these claims because, as established by the allegations in the complaint, all of the acts being challenged are rulings made by the judges in their judicial capacity. *See, e.g.*, *Young v. Siraco*, No. 2-cv-05418 EJD (PR), 2023 U.S. Dist. LEXIS 145812, at *6 (N.D. Cal. Aug. 18, 2023) (noting that, with respect to § 1983, "[a] state judge is absolutely immune from civil liability for damages for acts performed in his judicial capacity").

The Court also notes that Ms. Redeaux's claim (under § 1985) that the state court judges and/or Alameda County Superior Court conspired with TVC Funding IV REO, LLC to deprive her of her rights is conclusory.

D. <u>Order to Show Cause</u>

For the foregoing reasons, the Court dismisses the claims against the Judicial Defendants and with prejudice.

This leave TVC Funding IV REO, LLC as the sole defendant in the case. TVC Funding IV REO, LLC has not yet made an appearance in this case, but the docket sheet does not reflect that the defendant was served with the complaint (although a summons was issued).

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). Here, Ms. Redeaux filed her complaint on September 18, 2024. Thus, more than 90 days have passed without evidence that she served the complaint on TVC Funding IV REO, LLC.

Accordingly, the Court hereby orders Ms. Redeaux to show cause as to why her claims against TVC Funding IV REO, LLC should not be dismissed, without prejudice, based on failure to serve and/or failure to prosecute. **Ms. Redeaux must file a response to this order to show cause by February 17, 2025. Ms. Redeaux is forewarned that, if she does not timely file a**

8

**response to this order to show cause, then the Court shall automatically dismiss the claims against TVC Funding IV REO, LLC without prejudice.**

This order disposes of Docket No. 29 (as well as Docket Nos. 14 and 24, which are, respectively, the Judicial Defendants' original motion to dismiss and first amended motion to dismiss).

**IT IS SO ORDERED**.

Dated: January 27, 2024

_____
EDWARD M. CHEN
United States District Judge

9